## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| DAVID STOCKS, | :: | MOTION TO VACATE |
|     Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
|     v. | :: | CRIMINAL NO. |
| | :: | 1:17-CR-0257-ELR-RGV-2 |
| UNITED STATES OF AMERICA, | :: | |
|     Respondent. | :: | CIVIL ACTION NO. |
| | :: | 1:19-CV-2741-ELR-RGV |

## FINAL REPORT AND RECOMMENDATION

This matter has been submitted to the undersigned Magistrate Judge for consideration of David Stocks' pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 81], and supporting memorandum, [Doc. 82-1], and the government's response, [Doc. 86]. For the reasons that follow, it is **RECOMMENDED** that Stocks' § 2255 motion be **DENIED**.

### I.  PROCEDURAL HISTORY

A federal grand jury in the Northern District of Georgia returned a three-count indictment against Stocks and codefendant Michael Jon Kamalian, charging Stocks in Count One with conspiring to possess with intent to distribute at least one kilogram of heroin, in violation of 21 U.S.C. §§ 841(b)(1)(A)(i) and 846; in Count Two with attempting to possess with intent to distribute at least 100 grams of heroin,

in violation of §§ 841(b)(1)(B)(i) and 846 and 18 U.S.C. § 2; and in Count Three with using and carrying firearms during and in relation to a drug trafficking crime and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). [Doc. 17-1]. Represented by retained counsel J. Alfred Johnson, Stocks pled guilty to Counts Two and Three, pursuant to a negotiated plea agreement in which the government agreed to dismiss Count One. [Doc. 56]. Stocks signed the plea agreement and a separate certification section, which stated, in relevant part:

> I have read the Indictment against me and have discussed it with my attorney. I understand the charges and the elements of each charge that the Government would have to prove to convict me at trial. I have read the foregoing Plea Agreement and have carefully reviewed every part of it with my attorney. I understand the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them. . . No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement.

[Doc. 56-1 at 12-13].

At the plea hearing, Stocks was placed under oath and confirmed that he understood the rights he was giving up by pleading guilty and that he wished to do so. [Doc. 87 at 3, 8-10]. The government then summarized the negotiated plea agreement. [Id. at 10-14]. Stocks affirmed that he understood the government's summary and acknowledged that he signed the plea agreement and the separate certification section. [Id. at 14-16]. Stocks also confirmed that he was entering the

plea freely and voluntarily, that no one had threatened, forced, or coerced him to plead guilty, and that no one had promised him anything to enter a guilty plea. [Id. at 14-15]. Stocks then affirmed that he had enough time to discuss his guilty plea with counsel and that he was satisfied with counsel's representation. [Id. at 17-18].

Next, the government stated the elements of Counts Two and Three. [Id. at 18-19]. Specifically, as to Count Three, the government stated that it would have to prove that Stocks was guilty of one of the drug offenses charged in Counts One and Two and that Stocks possessed a firearm in furtherance of that drug trafficking crime. [Id. at 19]. The government later summarized what the evidence would show if the case went to trial and stated that, after a confidential informant negotiated with codefendant Kamalian for the purchase of two kilograms of heroin and after two samples provided by Kamalian tested positive for the presence of heroin, the informant and an undercover agent went to Kamalian's business, where Stocks was present, and provided Kamalian $170,000 in cash. [Id. at 24-26]. While Kamalian counted the money, the undercover agent and Stocks discussed that Stocks would take the informant to Atlanta to pick up the heroin. [Id. at 26-27]. Kamalian and Stocks were arrested; and, during a search of Stocks' vehicle that he drove to Kamalian's business, a handgun was found under the driver's seat,

and a shotgun was found in the trunk.  [Id. at 27].  Stocks agreed with the government's description, stating, "That's what happened."  [Id.].

The Court asked Stocks how he pled to Count Three, and Stocks responded that he carried a gun for his job and that the rifle found in his trunk had belonged to his deceased father.  [Id. at 28].  The Court stated that it understood that Stocks' was explaining that he legally possessed the firearms found in his vehicle at the time of his arrest and further stated that Stocks had already said that he did not dispute the factual basis for his plea.  [Id. at 28-29].  When given the opportunity, Stocks did not ask for further clarification as to the elements of Count Three, but told the Court that he was pleading guilty to Count Three and that he was in fact guilty of both Counts Two and Three.  [Id. at 29].  The Court then found that there was a factual basis to support Stocks' plea, "even in light of the . . . information [Stocks] just now added about the guns," and accepted Stocks' plea, stating "even though we had to stop and explain some things and clarify some things for [Stocks], . . . based on the way that [Stocks has] responded to and communicated with [the Court] today," the Court found that Stocks understood what he was doing "in entering these pleas."  [Id. at 29-30].

On September 18, 2018, the Court entered judgment, imposing a total sentence of 120 months of imprisonment.  [Doc. 71].  Stocks did not move to

4

withdraw his guilty plea or file a direct appeal. Stocks timely filed this pro se § 2255 motion, arguing only that his attorney provided him ineffective assistance by failing to challenge the factual basis for his guilty plea to Count Three and that, had counsel done so, he would have insisted on going to trial. [Doc. 81 at 4; Doc. 82-1 at 1, 5-12]. According to Stocks, counsel did not explain the difference between possession of a weapon and possession of a weapon in furtherance of a drug trafficking crime and should have objected that the factual basis for Count Three did not establish that Stocks possessed the firearms found in his vehicle "in furtherance" of a drug trafficking crime because he possessed those weapons for his personal protection when dropping off money for his employer. [Doc. 82-1 at 6-9, 11-12]. The government responds that Stocks' has failed to show that he received ineffective assistance of counsel. [Doc. 86 at 8-12].

## II.  DISCUSSION

A.  **Legal Standards**

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[T]o obtain collateral relief a

5

prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982) (footnote omitted).

The standard for evaluating ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). The analysis is two-pronged. However, a court need not address both prongs "if the defendant makes an insufficient showing on one." Id. at 697. A defendant asserting a claim of ineffective assistance of counsel must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. Second, a defendant must demonstrate that counsel's unreasonable acts or omissions prejudiced him. In order to demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

To succeed on a claim that a guilty plea was obtained as the result of ineffective assistance of counsel, a § 2255 movant must show that the advice he received from counsel "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985) (citations omitted). Counsel is required to provide

defendant sufficient information to make an informed and knowing decision to plead guilty, including "all of the information counsel had (and reasonably should have had)" and must offer defendant "reasonable advice" based on that information. Davidson v. United States, 138 F. App'x 238, 240 (11th Cir. 2005) (per curiam). Stocks has the burden of affirmatively proving prejudice. Gilreath v . Head, 234 F.3d 547, 551 (11th Cir. 2000). Additionally,

> the representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

**B.    Counsel's Effectiveness During Plea Colloquy**

The record belies Stocks' claim that he did not understand that the government would have to prove that he possessed the firearms in furtherance of a drug trafficking crime. Stocks acknowledged that he signed the plea agreement and separate certification section, which stated that he "understood the charges and the elements of each charge that the Government would have to prove to convict [him] at trial." [Doc. 56-1 at 13; Doc. 87 at 15-16]. During the plea colloquy, both

7

the government and the Court advised Stocks of the elements of Count Three. [Doc. 87 at 19, 28]. Specifically, the Court explained that Count Three charged Stocks with "using or carrying a firearm in furtherance of a drug trafficking crime," and Stocks admitted that he was in fact guilty of that offense. [Id. at 28-29]. Furthermore, when given the opportunity, Stocks did not seek further clarification regarding County Three. [Id. at 29]. Accordingly, the Court found that there was a factual basis to support Stocks' plea, despite Stocks' explanation of his ownership and other use of the firearms for reasons unrelated to the drug offenses. [Id. at 29-30].

Stocks has not met his "heavy burden" to show that the statements he made during his plea colloquy were false. See Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007) (per curiam) (holding that self-serving allegations in § 2255 motion were insufficient to rebut the presumption that statements made during plea colloquy were true and correct). Moreover, even if counsel failed to fully explain the elements of Count Three, this alleged failure "was cured by the district court." United States v. Wilson, 245 F. App'x 10, 12 (11th Cir. 2007) (per curiam).

As to Stocks' contention that there was an insufficient factual basis for his guilty plea to Count Three, the government was required to establish a "nexus between the firearm and the drug selling operation" in order to show that Stocks

possessed a firearm in furtherance of a drug trafficking crime. United States v. Verdieu, 520 F. App'x 865, 867 (11th Cir. 2013) (per curiam) (citation omitted). Factors relevant to this inquiry include, but are not limited to, the following:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to the drugs or drug profits, and the time and circumstances under which the gun is found.

Id. (citation omitted).

The facts stated by the government, which Stocks admitted were true, supplied a factual basis for Count Three. Stocks admitted that he was present at Kamalian's business, having arrived there in the vehicle in which the firearms later were found, and that he planned to drive the informant to Atlanta to pick up the heroin. [Doc. 87 at 26-27]. Based on these facts, a factfinder could reasonably conclude that Stocks possessed the firearms in furtherance of his attempt to possess heroin with the intent to distribute it. See Verdieu, 520 F. App'x at 867-68 (finding a nexus between the two defendants' attempted purchase of oxycodone pills from a confidential informant and the firearm found in the center console of their rented vehicle, as one defendant had $10,500.00 cash in his possession, which was the agreed upon purchase price of the drugs, and the other defendant tried to get the informant to conduct the drug transaction in the parking lot where his codefendant

and the firearm were waiting).  Therefore, Stocks cannot show deficient performance by counsel for failing to challenge the factual basis for Count Three, and his § 2255 motion is due to be denied.

### III.  CERTIFICATE OF APPEALABILITY

Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides that an applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right."  A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  Based on the foregoing discussion of Stocks' sole ground for relief, the resolution of the issue presented is not debatable by jurists of reason, and the undersigned recommends that he be denied a COA.

## IV. CONCLUSION

For the reasons stated, **IT IS HEREBY RECOMMENDED** that Stocks' § 2255 motion, [Doc. 81], and a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral of the § 2255 motion to the Magistrate Judge.

**SO RECOMMENDED**, this 20th day of November, 2019.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE